UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROYAL SOVEREIGN INTERNATIONAL, INC., a New Jersey Corporation, <br><br> Defendant. | No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR CIVIL PENALTIES
AND PERMANENT INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff, the United States of America, upon referral from the Consumer Product Safety Commission ("CPSC"), seeks civil penalties and injunctive relief against Defendant Royal Sovereign International, Inc. ("Royal Sovereign") for violations of the Consumer Product Safety Act ("CPSA"), 15 U.S.C. § 2051 *et seq.*

2. Between 2008 and 2014, Royal Sovereign International ("Royal Sovereign") and its affiliates distributed and sold thousands of portable air conditioners that had a substantial product hazard that caused the units to catch fire and created serious risk of death or injury to consumers. Royal Sovereign knew about these risks from multiple sources, including thirteen fires between 2008 and 2013, but failed to report these problems to the CPSC as required by law. At least one person died and several more were injured as a result.

## THE PARTIES

3. Plaintiff is the United States of America.

4. Defendant Royal Sovereign is a New Jersey corporation, incorporated in 2001 and headquartered in Rockleigh, New Jersey, that imported and distributed office products and home appliances. These products included more than 33,000 portable air conditioners with model numbers PAC-3012 and PAC-3012_RB; ARP-3012, ARP-3012 KIT, and ARP-3012S; and ARP-3014 and ARP-3014SC (hereinafter the "Subject Products"). Royal Sovereign distributed the Subject Products mostly to retailers such as Costco, Home Depot, Amazon, and Best Buy, which then sold them to consumers; some sales were direct-to-consumer. The Subject Products retailed for approximately $349.99 per unit and were sold throughout the United States and Canada between 2008 and 2014.

5. Most of the Subject Products were distributed by Royal Centurian, Inc. ("Royal Centurian") a Royal Sovereign affiliate run by its Chief Executive Officer T.K. Lim and headquartered at the same New Jersey address. Royal Centurian dissolved in 2013, and Royal Sovereign assumed responsibility for all issues involving the Subject Products that Royal Centurian distributed.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355(a) and 15 U.S.C. § 2071(a).

7. Venue in the District of New Jersey is proper under 28 U.S.C. §§ 1391(b), (c) and 1395(a).

## THE CONSUMER PRODUCT SAFETY COMMISSION AND ACT

8.  The CPSC is an independent federal agency, established by Congress to protect the public against unreasonable risks of injury from consumer products. 15 U.S.C. § 2051(b)(1).

9.  Under the CPSA, every manufacturer of a consumer product distributed in commerce, and every distributor and retailer of such product "who obtains information which reasonably supports the conclusion that such product . . . contains a defect which could create a substantial product hazard . . . shall immediately inform the Commission . . . of such defect" unless such manufacturer, distributor, or retailer "has actual knowledge that the Commission has been adequately informed of such defect . . . ." 15 U.S.C. § 2064(b)(3). Congress defined "substantial product hazard" to include a product defect that "creates a substantial risk of injury to the public." 15 U.S.C. § 2064(a)(2).

10. The CPSA also requires that every manufacturer, distributor or retailer of a consumer product distributed in commerce "who obtains information which reasonably supports the conclusion that such product . . . creates an unreasonable risk of serious injury or death, shall immediately inform the Commission of such . . . risk" unless the manufacturer, distributor or retailer "has actual knowledge that the Commission has been adequately informed . . . of such risk." 15 U.S.C. § 2064(b)(4).

11. The CPSC defines "serious injury or death" to include any significant injury, including injuries necessitating medical or surgical treatment and lacerations requiring sutures. 16 C.F.R. § 1115.6(c).

12. Under the CPSC's regulations defining the time to report, "immediately" means "within 24 hours" after a firm has obtained the requisite information regarding a defect or unreasonable risk. 16 C.F.R. § 1115.14(e). A firm should not wait for serious injury or death to

occur before reporting.  16 C.F.R. § 1115.6(a).  Companies must report "immediately" to the CPSC so that public notice to consumers and/or a remedy, such as a recall to repair or replace the product, may be sanctioned by the CPSC.

13. The failure to furnish information required by 15 U.S.C. § 2064(b) is a prohibited act under the CPSA.  15 U.S.C. § 2068(a)(4).

14. Any person who knowingly violates 15 U.S.C. § 2068 is subject to civil penalties. 15 U.S.C. § 2069(a)(1).  The CPSA defines "knowingly" as "(1) the having of actual knowledge, or (2) the presumed having of knowledge deemed to be possessed by a reasonable man who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of representations."  15 U.S.C. § 2069(d).

15. The CPSA's reporting requirements for consumer product manufacturers, distributors, and retailers protect the public health and safety.  The sooner the CPSC knows of a potential problem, the sooner it can investigate and take necessary action, including remedial action to remove the product from commerce and providing a remedy for consumers.

## FACTUAL ALLEGATIONS

*The Subject Products*

16. Between March 2008 and August 2014, Royal Sovereign and its affiliate Royal Centurian imported and distributed approximately 33,570 of the Subject Products.  Royal Sovereign imported and distributed approximately 3,208 of the PAC-3012 model of the Subject Products between 2011 and 2014.  Between 2008 and 2011, Royal Centurian imported and distributed approximately 30,362 units of the ARP-3012 and ARP-3014 models of the Subject Products.  The Subject Products were made in China by Ningbo Royal Sovereign Co. Ltd. ("RS

Ningbo"), an affiliate of Royal Sovereign that began operating in 2005 and ceased operations in approximately 2010.

17. Royal Sovereign stopped distributing the Subject Products in 2014, having ceased doing business with the manufacturer due to the known fire hazards. Royal Sovereign continued to distribute other products during this time.

*Royal Sovereign's Knowledge of the Defective and Hazardous Products*

18. From 2008 to 2013, the Subject Products were involved in at least thirteen fires, most of which Royal Sovereign learned about at or around the time they occurred:

   a. In or around September 2008, a Royal Sovereign ARP-3000 series portable air conditioner was involved in a fire alleged to have caused $300,000 in property damage. The property insurer sued Royal Sovereign in 2009, alleging that the fire had been caused by Royal Sovereign's defective air conditioner and attaching the fire marshal's report. Royal Sovereign ultimately settled the lawsuit.

   b. In or around June 2010, a Royal Sovereign portable air conditioner was involved in a fire alleged to have caused over $375,000 in property damage. The fire marshal noted that "all possible causes, outside of the air conditioner unit, were eliminated." The property insurer sued Royal Sovereign and Royal Centurian in 2011, alleging that the fire had been caused by their defective portable air conditioner. Royal Sovereign ultimately settled the lawsuit.

   c. In or around July 2010, a Royal Sovereign ARP-3014 portable air conditioner was involved in a fire alleged to have caused over $700,000 in property damage. The property insurer sued Royal Sovereign in 2012, alleging that the fire had been caused by its defective portable air conditioner. Royal Sovereign ultimately settled the lawsuit.

    d.  In or around July 2010, a Royal Sovereign ARP-3012 portable air conditioner was involved in a fire that was alleged to have caused over $100,000 in property damage. The property insurer sued Royal Sovereign in 2013, alleging that the fire had been caused by its defective portable air conditioner. Expert reports submitted in connection with the litigation opined that the "only possible cause of the fire was an electrical failure of the Royal Portable Air Conditioner" and that the air conditioner "was defective and unreasonably dangerous when it left the manufacturing facility." Royal Sovereign ultimately settled the lawsuit.

    e.  An August 2011 loss run from Royal Sovereign's casualty insurer indicates that a consumer claimed that in or around June 2011, a Royal Sovereign air conditioner "caught fire and caused damage to [his] home." The insurer reserved indemnity and defense expenses in connection with this claim.

    f.  In or around June 2012, a Royal Sovereign ARP-3012S portable air conditioner was involved in a fire alleged to have caused at least $9,000 in property damage. Royal Sovereign ultimately settled the lawsuit.

    g.  In or around June 2012, a Royal Sovereign ARP-3012S portable air conditioner was involved in a fire alleged to have caused at least $11,000 in property damage. Royal Sovereign received notice of the claim no later than October 2012. Royal Sovereign ultimately settled the lawsuit.

    h.  In or around August 2012, a Royal Sovereign portable air conditioner was involved in a fire alleged to have caused at least $400,000 in property damage. Royal Sovereign received notice of the claim in August 2012. Royal Sovereign ultimately settled the lawsuit.

   i. On or about August 16, 2012, a Royal Sovereign portable air conditioner was involved in a fire alleged to have caused at least $9,000 in property damage. Royal Sovereign received notice of this claim on September 20, 2012.

   j. In or around August 2012, a Royal Sovereign ARP-3012 portable air conditioner was involved in a fire, resulting in a property damage subrogation claim of at least $18,000. Royal Sovereign ultimately settled the lawsuit.

   k. In or around May 2013, a Royal Sovereign Model ARP-3012S portable air conditioner was involved in a fire, resulting in a property damage subrogation claim of at least $40,000 and a lawsuit alleging that the fire was caused by a defective air conditioner. Royal Sovereign received notice of the claim on or around May 23, 2013. The retailer that had sold the product sought defense and indemnification from Royal Sovereign through its claims administrator. In 2015, a default judgment was entered against Royal Sovereign.

   l. In or around July 2013, a consumer reported to Royal Sovereign an incident with her portable air conditioner, stating that the consumer's ARP-3012S had caught fire and should be recalled. Within ten days, Royal Sovereign agreed to pay $700 to this consumer in return for a signed release. A Royal Sovereign employee assured the consumer: "[T]his is not a common occurrence, and I will be alerting our quality teams as to your experience."

 19. Royal Sovereign knew of all of these fires by the end of 2013, when it began tracking them with a spreadsheet entitled "2012 & 2013 Air-Con Caught on Fire Cases."

 20. On June 14, 2013, and again on August 9, 2013, a retailer that sold Subject Products in the United States sent Royal Sovereign emails with the subject, "CPSC Retailer Reporting – Royal Sovereign." In each email, retailer personnel advised Royal Sovereign: "Based upon the information available to your company – including, but not limited to, information that you receive

7

from [the retailer] – your company should determine whether it has a duty to notify CPSC pursuant to Section 15 of the Consumer Product Safety Act."

21. On August 24, 2016, a Royal Sovereign Model PAC-3012 portable air conditioner was involved in a house fire in New York. A mother and her two children were transported to area hospitals, where each of them required placement on a ventilator to treat their smoke inhalation injuries. By August 31, 2016, Royal Sovereign had received notice of the fire and the investigation then underway. The children survived, but the mother died of her injuries in December 2016. In or about December 2016, Royal Sovereign reported the fire to its liability insurance carrier. In 2017, Royal Sovereign received notice of a lawsuit filed by the victim's family. Yet Royal Sovereign did not report the Subject Product involved in this deadly fire or any of the earlier fires to the CPSC.

*Royal Sovereign's Failure to Report to CPSC*

22. On March 3, 2021, a retailer of the Subject Products issued a notice to consumers who had purchased a Royal Sovereign portable air conditioner between 2011 and 2012, advising them that the unit "does not meet our safety standards" and that "out of an abundance of caution," they should "stop using this product immediately." By March 15, 2021, multiple consumers had contacted Royal Sovereign about this notice. In response to one consumer inquiry, Royal Sovereign advised that "the situation is being investigated" and that "someone will follow up . . . when the investigation is complete."

23. On March 19, 2021, a consumer informed the CPSC of the retailer's notice. One week later, the CPSC notified Royal Sovereign of the consumer report and reminded Royal Sovereign of its duty to report under Section 15(b), if it possessed information that reasonably

8

supported a conclusion that the Subject Product contained a defect which would create a substantial product hazard, or if it created an unreasonable risk of serious death or injury.

24. Notwithstanding the CPSC's notification—and the fact that it had known about the defects in the Subject Products for years—Royal Sovereign did not send an initial report to the CPSC until June 29, 2021, only after CPSC requested that it do so. Royal Sovereign's initial report stated that the "potential fire hazard" was discovered on August 24, 2016—nearly five years prior—and that there were seven known incidents, two known injuries, and one known death.

25. Royal Sovereign finally filed a full Section 15 report with the CPSC on August 17, 2021.

26. Royal Sovereign entered into a Corrective Action Plan Agreement with the CPSC on December 3, 2021, which provided for refunds to consumers who purchased the Subject Products. Prior to entering into the Corrective Action Plan, Royal Sovereign had no reasonable or effective program or system to ensure compliance with the CPSA.

## VIOLATIONS OF THE CPSA

27. At all times relevant hereto, Royal Sovereign was a "manufacturer" of the Subject Products, defined in 15 U.S.C. § 2052(a)(11) to include any person who manufactures or imports a consumer product.

28. At all times relevant hereto, Royal Sovereign was also a "retailer" of the Subject Products, defined in 15 U.S.C. § 2052(a)(13) to include a person to whom a consumer product is delivered or sold for purposes of sale or distribution by such person to a consumer.

29. Royal Sovereign imported and sold the Subject Products: (a) to consumers for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise; and (b) for the personal use, consumption or enjoyment of consumers in or around a

permanent or temporary household or residence, a school, in recreation, or otherwise. *See* 15 U.S.C. § 2052(a)(5).

30. Each Subject Product is a "consumer product" as defined in 15 U.S.C. § 2052(a)(5).

## COUNT I
*Failure to Report a Substantial Product Hazard*

31. Paragraphs 1-30 are incorporated by reference and realleged as if set forth fully herein.

32. Royal Sovereign, separately as to each individual Subject Product distributed in commerce, knowingly failed to immediately inform the CPSC, in violation of 15 U.S.C. §§ 2068(a)(4) and 2069, upon obtaining information that reasonably supported the conclusion that the Subject Product contained a defect that could create a substantial product hazard (*i.e.*, a defect that could create a substantial risk of injury to the public), as required by 15 U.S.C. §§ 2064(a)(2) and (b)(3). These violations started when Royal Sovereign obtained the information reasonably supporting the conclusion that the Subject Products contained a defect and continued until Royal Sovereign informed the CPSC about the defect in 2021.

## COUNT II
*Failure to Report Unreasonable Risks of Serious Injury or Death*

33. Paragraphs 1-30 are incorporated by reference and realleged as if set forth fully herein.

34. Royal Sovereign, with respect to each individual Subject Product distributed in commerce, knowingly failed to immediately inform the CPSC, in violation of 15 U.S.C. §§ 2068(a)(4) and 2069, upon obtaining information that reasonably supported the conclusion that the Subject Product created an unreasonable risk of serious injury or death, as required by 15 U.S.C. § 2064(b)(4). These violations started when Royal Sovereign first obtained the

information reasonably supporting the conclusion that the Subject Products created an unreasonable risk of serious injury or death and continued until Royal Sovereign furnished such information to the CPSC.

## COUNT III
*Failure to Implement a Reasonable and Effective Compliance Program*

35. Paragraphs 1-30 are incorporated by reference and realleged as if set forth fully herein.

36. Because Royal Sovereign's repeated, years-long failures to furnish information required under 15 U.S.C. § 2064(b)(3) and (4) were unlawful acts, in violation of 15 U.S.C. § 2068(a)(4), and Royal Sovereign has not implemented and maintained a reasonable and effective program or system for compliance, injunctive relief is warranted, pursuant to 15 U.S.C. § 2071(a)(1).

## JURY DEMAND

The United States demands a trial by jury on all Counts so triable.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that this Court:

I. Impose civil penalties against Royal Sovereign in accordance with 15 U.S.C. § 2069, for each separate violation and the related series of violations alleged in Counts I and II of this Complaint.

II. Award Plaintiff injunctive relief against Royal Sovereign as set forth in Count III, in accordance with 15 U.S.C. § 2071(a)(1), including but not limited to relief that would: (1) require Royal Sovereign to comply with the reporting requirements of the CPSA and its accompanying regulations; (2) assure such future compliance by requiring Royal Sovereign to establish internal controls and procedures designed to provide timely reports to the CPSC

whenever Royal Sovereign obtains information which reasonably supports the conclusion that any of its products contains a defect which could create a substantial product hazard or creates an unreasonable risk of serious injury or death to consumers; and (3) provide for liquidated damages that become immediately due and payable in the event that Royal Sovereign fails to comply with the reporting requirements of the CPSA.

    III.       Award plaintiff judgment for its costs.

    IV.       Award other and further relief that this Court deems just and proper.

Respectfully submitted,

Dated:  June 13, 2025

For the UNITED STATES OF AMERICA

**BRETT A. SHUMATE**
Assistant Attorney General
Civil Division

**SARMAD KHOJASTEH**
Acting Deputy Assistant Attorney General
Civil Division

**LISA K. HSAIO**
Acting Director, Consumer Protection Branch

**C.B. BUENTE**
Assistant Director

/s/ David G. Crockett, Jr.
**DAVID G. CROCKETT, JR.**
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
Telephone: 202-305-0192
Fax: 202-514-8742
Email: david.g.crockett@usdoj.gov

For the CONSUMER PRODUCT SAFETY COMMISSION

**MATTHEW A. CAMPBELL**
General Counsel

**MELISSA V. HAMPSHIRE**
Assistant General Counsel

**PATRICIA K. VIEIRA**
Attorney

Office of the General Counsel
U.S. Consumer Product Safety Commission
Bethesda, MD 20814

**MARK RAFFMAN**

13

        Attorney

        Office of Compliance and Field Operations
        U.S. Consumer Product Safety Commission
        Bethesda, MD 20814

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on June 13, 2025, I caused a true and correct copy of the above-entitled Complaint for Civil Penalties and Permanent Injunctive Relief to be served by electronic mail to counsel for Defendants as follows:

Jacques Catafago, Esq.
CATAFAGO FINI LLP
One Grand Central Place
New York, NY 10165
Telephone: (212) 239-9669
Email: jacques@catafagofini.com

/s/ David G. Crockett, Jr.
**DAVID G. CROCKETT, JR.**
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
Telephone: 202-305-0192
Fax: 202-514-8742
Email: david.g.crockett@usdoj.gov